**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARDELL FINANCIAL CORP. and )<br>DELTEC HOLDINGS, INC. )<br> )<br>       Petitioners, )<br> )<br> )<br>       v. )<br> )<br>SUCHODOLSKI ASSOCIATES, INC. and )<br>CONSULTORA WORLDSTAR, S.A. )<br> )<br> )<br>       Respondents. )<br> )<br> )<br> ) | Case No. 09-CV-6148-VM |

**RESPONDENTS' MEMORANDUM IN SUPPORT OF**
**CROSS PETITION TO VACATE ARBITRATION AWARD**

Michael Evan Jaffe
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037-1122
Telephone: (202) 663-8068
Facsimile: (202) 663-8007
Email: michael.jaffe@pillsburylaw.com

Eric Fishman
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York 10036-4039
Telephone: (212) 858-1745
Facsimile: (212) 858-1500
Email: eric.fishman@pillsburylaw.com

David L. Kelleher
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
South Tower
Washington, D.C. 20036
Telephone: (202) 457-1685
Facsimile: (202) 457-1678
Email: dkelleher@jackscamp.com

## **Table of Contents**

Page

Table of Authorities  ……………………………………………………………...…(ii)

Introduction.................................................................................................................1

Background.................................................................................................................3

The Arbitration Proceedings......................................................................................4

Discussion...................................................................................................................5

I.       Legal Standard .................................................................................5

II.      The Majority Arbitrators Manifestly Disregarded New York Law When
         Denying SAI/Worldstar's Demand For Indemnification From Deltec...............8

         A.      The Majority Arbitrators' Manifest Disregard Of New York
                 Surety Law……………………………………………………………..8

         B.      The Majority Arbitrators' Manifest Disregard Of New York Law
                 On Exoneration ……………………………………………………13

III.     The Majority Arbitrators' Determination On Commercial Reasonableness Should
         Be Vacated As The Product Of A Fundamentally Unfair Proceeding .................16

Conclusion ................................................................................................................24

**Table of Authorities**

Cases                                                                    Page

*Admiral Oriental Line v. United States,*
86 F. 2d 201 (2d Cir. 1936).................................................................15

*Bank of New York v Hirschfeld,*
59 A.D.2d 976 (App. Div. Third Dept 1977)..............................................10, 11

*Barr v. Hyman Raffle,*
97 A.D. 2d 696 (App. Div., First Dept. 1983) ...........................................9, 11

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.,*
934 F. 2d 30 (2d Cir. 1991)................................................................14, 15

*Caja National De Ahorro Y. Seguros in Liquidation v. Deutshe Ruckversicherung AG,*
06-CV-5826 (PKL), 2007 U.S. Dist. LEXIS 56197 (S.D.N.Y. 2007) ............5, 6

*Chemical Bank v Meltzer,*
93 N.Y. 2d 296 (1999) ......................................................................8, 9

*Hall Street Assocs., L.L.C. v. Mattel, Inc.,*
128 S. Ct. 1396 (2008).......................................................................6

*Holmes v Hughes,*
14 P.2d 149 (Cal. App. 1932) ...............................................................12

*Indemnity Ins. Co. of North America v. McClure,*
254 N.W. 913 (Minn. 1934)..................................................................12

*Iran Aircraft Ind. v. Avco Corp.,*
980 F. 2d 141 (2d Cir. 1992).................................................................7, 22

*Knitzky v. Meyer,*
49 N.Y. 571 (1872) .........................................................................9

*Leghorn v. Ross,*
53 A.D.2d 560 (App. Div. First Dept. 1976) ............................................9, 11

*Leslie v. Compton,*
172 P. 2d 1015 (Kan. 1918)..................................................................12

*Lori-Kay Golf, Inc. v. Lassner,*
61 N.Y.2d 722 (1984) ......................................................................10, 11

(ii)

*Mid-Hudson Catskill Rural Migrant Ministry, Inc.*v. *Fine Host Corp.*,
418 F. 3d 168 (N.D.N.Y. 2003) ........................................................................14, 15

*Pro-Specialties, Inc. v. Thomas Funding Corp*,
812 F. 2d 797 (2d Cir. 1987).............................................................................10, 11

*Sanluis Developments, L.L.C. v. CCP Sanluis, L.L.C.*,
556 F. Supp. 2d 329 (S.D.N.Y. 2008).................................................................5, 6

*Stolt-Nielsen SA, v. AnimalFeeds Int'l. Corp.*,
548 F. 3d 85 (2d Cir. 2008), *cert. granted*, 2009 U.S. Lexis 4345, 77 U.S.L.W. 3678 (June 15,
2009.................................................................................................................6, 12, 13

*Tempo Shain Corp. v Bertek, Inc.*,
120 F. 3d 16 (2d Cir. 1997)...................................................................................22

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toy's "R" Us, Inc.*,
126 F. 3d 15 (2d. Cir. 1997)...................................................................................6

<u>Statutes and Treaties</u>

Federal Arbitration Act, 9 U.S.C. §1, *et seq* ...................................................Passim

New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards,
9 U.S.C. §201, *et. seq*...................................................................................Passim

Inter-American Convention on International Commercial Arbitration, 9 U.S.C. §301, *et seq* .........5

<u>Rules</u>

American Arbitration Association, Commercial Arbitration Rules ..................................Passim

(iii)

## Introduction

Suchodolski Associates, Inc. and Consultora Worldstar, S.A. (collectively, "SAI/Worldstar") submit this memorandum in support of their cross-petition to vacate the award of the American Arbitration Association ("AAA") dated April 28, 2009, as corrected on June 8, 2009 (the "Final Award").

The Final Award is fatally flawed and not unanimous.  It is a ruling that should be vacated.  The arbitration underlying the Final Award was predicated on the express agreement of the parties to submit their disputes for resolution pursuant to the substantive laws of New York and the arbitration rules of the AAA.  The Final Award observed neither.

Even as the majority arbitrators expressly recognized that the arbitration was governed by New York law and that under New York law SAI/Worldstar were sureties to Deltec Holdings ("Deltec"), the majority manifestly disregarded more than 100 years of clearly applicable and explicit New York surety law to deny SAI/Worldstar their right of indemnification.

The majority's disregard of New York law was knowing and intentional.  The thoughtful dissent of Arbitrator Davis, a neutral, independent and impartial member of the Tribunal, makes that plain in the section of the dissent entitled "Disregarding the Law of Suretyship."  Dissent ¶ 21.[1]  Arbitrator Davis explains, over the course of eight numbered paragraphs that cite and apply New York law, how the majority "ignores New York law requiring a different analysis and result."  Exhibit 2 ¶¶ 21 - 28.  The majority turned a blind-eye to New York law and instead relied on limited case-law outside of New York.

---

[1] The opinion of the majority is annexed to Respondents' Cross-Petition (the "Cross-Petition") as Exhibit 1 and the dissent is annexed to the Cross-Petition as Exhibit 2.  Unless otherwise noted, all exhibits referenced herein are attached to the Cross-Petition submitted herewith.

Tellingly, the majority, in an alternative holding revealed that they knew the applicable principle of New York surety law that entitled SAI/Worldstar to indemnification; but, refused to apply it. Their refusal to apply New York law, as specified by the parties, violates the parties' agreement to arbitrate, which is the foundation for the arbitrators' jurisdiction, as well as Section 10(a)(4) of the Federal Arbitration Act and the Manifest Disregard Doctrine as articulated by the Second Circuit.

In addition, the majority – over the strenuous objection of SAI/Worldstar and the disagreement of Arbitrator Davis – conducted a one-sided proceeding that denied SAI/Worldstar the opportunity to present witnesses, and excluded pertinent and material evidence in violation of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), the Federal Arbitration Act and the AAA Commercial Arbitration Rules (the "AAA Rules"). The majority, denied SAI/Worldstar the opportunity to present any witnesses at the arbitration hearing, but permitted Cardell to present its witness. The majority compounded this fundamental unfairness when they denied the proffered testimony from SAI/Worldstar's investment banking expert witness as neither relevant nor material - but permitted Cardell's investment banker to address the very same issues.

The unequal treatment was palpable – it prejudiced SAI/Worldstar by preventing them from presenting evidence in support of their case, and it foreclosed development of the evidentiary record required by New York law for resolving the disputes presented. The Dissent captured the unfairness in the following text:

> 6.(a) Although the Final Award states otherwise (¶81), Respondents have identified credible evidence that $2.5 million may not have been a fair price. A Cardell representative testified in the prior arbitration that Deltec's assets were worth as much as $40 million. The Cardell-prepared offering materials placed that value at approximately $24 million. …. The shares sold constituted 43.48% of Deltec …. Under New York law, a price differential of this magnitude requires a hearing, particularly where, as here, there are allegations of self-dealing.

- 2 -

7.  Further, in addressing this issue, the Final Award does not consider the impact of the tribunal's procedural orders.  Respondents sought production from Cardell of documents regarding Deltec's asset and share values.  The Tribunal denied that request as beyond the scope of the constricted, one-sided hearing the Tribunal permitted.  Now, the Final Award would preclude Respondents from offering even their own valuation evidence.  This tribunal may not properly deny Respondents the opportunity to secure or offer evidence regarding market value and then summarily decide that, because there is no evidence specifically on point, Respondents lose.

8.  Respondents also raised specific concerns regarding the "method, manner, time, place and other terms" of the auction.  In his affidavit, Mr. Otero, based on 20 years of relevant experience, concluded that the auction was not commercially reasonable because it was not designed to generate substantial investor interest...

*   *   *

10.(a)  The Final Award's error in ignoring these disputes is compounded by its reliance on Mr. Freeman's testimony, taken at a hearing in which Respondents were precluded from offering testimony.  While Mr. Freeman was provided an opportunity to support his views, expound on the points in his affidavit, and to testify on areas other than those addressed in his affidavit, the Final Award denies Mr. Otero that same opportunity.  This treatment is plainly inconsistent with the Tribunal's obligation to treat the parties "with equality" and to provide them a "fair opportunity" to present their positions.

Exhibit 2 ¶¶ 6 - 8, 10 (citations omitted).

## **Background**

The Final Award involved two related but distinct disputes, one between Cardell Financial Corp. ("Cardell") and SAI/Worldstar, and the other between SAI/Worldstar and Deltec.  The disputes arose when Cardell foreclosed on and sold shares of stock owned by SAI/Worldstar.  The shares had been pledged by SAI/Worldstar as collateral for a loan from Cardell to Deltec.

Specifically, as detailed in the Final Award, Cardell made a loan to Deltec pursuant to a written Term Loan Agreement in November 2001.  Exhibit 1 ¶ 23.  SAI/Worldstar were not parties to the Term Loan Agreement, and neither was bound to pay Cardell for Deltec's debt.  Exhibit 1 ¶ 24.

- 3 -

On the same day that Cardell and Deltec executed the Term Loan Agreement, Cardell and SAI/Worldstar executed a Stock Pledge Agreement, pursuant to which SAI/Worldstar pledged their shares of stock in Deltec as collateral for Deltec's performance under the Term Loan Agreement.  Exhibit 1 ¶ 28.  Under New York law, by reason of their pledge of stock, a surety relationship was established between SAI/Worldstar and Deltec.  Exhibit 1 ¶ 117.

Deltec failed to repay its loan and was declared in default by a 2004 Arbitration Award. Exhibit 1 ¶ 38.  Cardell, purporting to act pursuant to the 2004 Arbitration Award, foreclosed on SAI/Worldstar's pledged shares and, in January 2005, conducted an auction in which Cardell – as the only bidder – credit bid $2.5 Million.  Exhibit 1 ¶ 55.

**The Arbitration Proceedings**

Cardell commenced the arbitration on July 25, 2006, seeking validation of its auction procedures.  Cardell demanded, *inter alia,* a declaration that its sale of SAI/Worldstar's shares was conducted in a commercially reasonable manner in accordance with the 2004 Arbitration Award and New York law.  Exhibit 1 ¶¶ 2, 65.

SAI/Worldstar joined Deltec, the primary obligor, as a third-party respondent. SAI/Worldstar, as sureties for Deltec, demanded indemnification from Deltec pursuant to New York law for the value of their shares foreclosed upon by Cardell.  Exhibit 1 ¶ 66.

Over the dissent of Arbitrator Davis, the majority declared that SAI/Worldstar had failed to establish a genuine issue of material fact with respect to the commercial reasonableness of Cardell's foreclosure sale, and therefore granted Cardell summary judgment on the issue of commercial reasonableness.  Exhibit 1 ¶ 102.  With respect to SAI/Worldstar's demand for indemnity from Deltec, the majority arbitrators ruled that SAI/Worldstar were sureties for Deltec, but that Deltec had no duty to indemnify SAI/Worldstar for their loss because the underlying agreements were silent with respect to indemnification.  Exhibit 1 ¶ 136.

- 4 -

Arbitrator Davis protested both rulings, explaining that the ruling on the issue of SAI/Worldstar's right to indemnification exhibited manifest disregard of New York law and, in addition, that the one-sided proceeding mandated by the majority denied SAI/Worldstar an opportunity to present their case.  Exhibit 2 ¶¶ 3-11, 21-28.

<u>Discussion</u>

## I.  Legal Standard

Cardell, Deltec and SAI are corporations organized under the laws of Panama, and Worldstar is a corporation organized under the laws of Uruguay; thus, the parties to the arbitration are non-citizens of the United States.  Exhibit 1 ¶ 1.  The site of the arbitration was New York.  Exhibit 1 p. 57.  Thus, there are two overlapping statutory basis for vacating the Final Award - the New York Convention and the Federal Arbitration Act.  *Sanluis Developments, L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329 (S.D.N.Y. 2008); *Caja National De Ahorro Y. Seguros in Liquidation v. Deutshe Ruckversicherung AG*, 06-CV-5826 (PKL), 2007 U.S. Dist. LEXIS 56197 (S.D.N.Y. 2007).

The New York Convention, which is incorporated by the Inter-American Convention, teaches at Article V(1)(e) that an award is to be vacated when it "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  Here, the United States is the rendering state and this Court is a competent authority of the United States.  Thus, under Article V(1)(e) this Court has the authority to vacate the Final Award under the arbitral law of the United States – the Federal Arbitration Act.  *Yusuf Ahmed*

*Alghanim & Sons, W.L.L. v. Toy's "R" Us, Inc.*, 126 F. 3d 15 (2d. Cir. 1997); *Sanlius Development, L.L.C.*, 55 F. Supp. 2d. at 334; *Caja National*, U.S. Dist. LEXIS 56197 at * 6, 7.[2]

Section 10(a) 4 of the Federal Arbitration Act provides that an award is to be vacated "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Section10(a)(4) includes the authority of the Court to vacate an award under the Manifest Disregard Doctrine. *Stolt-Nielsen SA*, *v. AnimalFeeds Int'l. Corp.*, 548 F. 3d 85, 95 (2d Cir. 2008), *cert. granted*, 2009 U.S. LEXIS 4345, 77 U.S.L.W. 3678 (June 15, 2009).

The Manifest Disregard Doctrine enforces the parties' agreement to arbitrate by *requiring the arbitrators to address the issues and apply the law as the parties agreed*.  *Id.*  For example, when arbitrators know of the relevant legal principle to a controversy, but, nonetheless refuse to apply it, the arbitrators have failed to carry out their mandate.  *Id.*  Failure to apply the law as the parties agreed violates the Federal Arbitration Act because, in the words of the Second Circuit, "parties do not agree in advance to submit to an arbitration that is carried out in manifest disregard of the law.  Put another way, the arbitrators have thereby 'exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.'"  *Id. quoting* 9 U.S.C. §10(a)(4).

The majority failed to carry out their mandate and thereby "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made" within the meaning of Section 10(a)(4) of the Federal Arbitration Act.  The majority

---

[2] Article V(2)(b) similarly provides for this Court to refuse recognition of an award that is contrary to the Federal Arbitration Act. Article V(2)(b) authorizes a court to refuse recognition of an award  that is contrary to the public policy of the country.  The public policy of the United States with respect to arbitrations is reflected in the Federal Arbitration Act.  *Hall Street Assoc, LLC v. Mattel, Inc.*, __ U.S. __, 128 S.Ct. 1396, 1402 (2008)("Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy…'")(citations omitted).

manifestly disregarded New York law and the parties' agreement to arbitrate with respect to a surety's right to indemnification when they rejected SAI/Worldstar's claim against Deltec.  The majority manifestly disregarded New York law and the parties' agreement to arbitrate when they failed to conduct an independent assessment of the commercial reasonableness of Cardell's sale.

Further, the proceedings structured by the majority violated the Federal Arbitration Act, the New York Convention and the AAA Rules, independently and collectively, by denying SAI/Worldstar a fair arbitration proceeding.  Section 10(a)(3) of the Federal Arbitration Act provides for vacating an award, "[w]hen the arbitrators were guilty of misconduct…in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

Article V(1)(b) of the New York Convention is to the same effect, providing for vacating an award when the "party against whom the award is invoked was not given proper notice…or was otherwise unable to present his case."  Article V(1)(b) provides for the application of the forum's standard of due process, and under New York and federal law in the United States "the fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Iran Aircraft Ind. v. Avco Corp.*, 980 F. 2d 141, 146-47 (2d Cir. 1992).  SAI/Worldstar were denied fundamental due process when the majority, over their objection, denied them an opportunity to be heard.

In addition, the arbitration was conducted in violation of the applicable AAA Rules. Exhibit 1 p.1.  The AAA Rules expressly provide for each party to be heard and for each party to be provided a fair opportunity to present its case.  AAA Rule 30(a) is explicit:

> The claimant shall present evidence to support its claim.  The respondent shall then present evidence to support its defense…The arbitrator has the discretion to vary this procedure, *provided that the parties are treated with equality and that each*

- 7 -

> *party has the right to be heard and is given a fair opportunity to present its case.* (Emphasis added.)

SAI/Worldstar were denied equal treatment and the opportunity to present their case.

The truncated arbitration proceeding conducted by the majority precluded evidence pertinent and material to the controversy, denied SAI/Worldstar the opportunity to present their case in a meaningful manner, and denied SAI/Worldstar equal treatment with respect to the presentation of evidence. Each of these violations is an additional ground requiring the vacating of the Final Award.

## II.   The Majority Arbitrators Manifestly Disregarded New York Law When Denying SAI/Worldstar's Demand For Indemnification From Deltec.

### A.  The Majority Arbitrators' Manifest Disregard Of New York Surety Law.

SAI/Worldstar, because they had pledged their shares of stock as collateral for Deltec's debt and lost their shares to a foreclosure sale when Deltec defaulted on its loan repayment obligation, are entitled to indemnification from Deltec as a matter of law. New York law is explicit. No magic words need to be exchanged between the surety and the primary obligor to establish the primary obligor's duty to indemnify the surety. No contract of indemnification is necessary. The obligation to indemnify arises by operation of law. This has been the settled law of New York for over 100 years. The majority, however, manifestly disregarded these principles and denied SAI/Worldstar their right to indemnification that is assured by New York law.

There is no dispute that SAI/Worldstar were sureties to Deltec as a result of the 2001 Loan Transaction. The Court of Appeals, in *Chemical Bank v Meltzer*, 93 N.Y. 2d 296, 302, 712 N.E. 2d 656, 600 (1999), explained suretyship as follows:

> A suretyship arrangement is, at its core, the confluence of three distinct, yet interrelated obligations. These obligations are embodied in the tripartite relationship of principal obligor and oblizee; obligee and secondary obligor and principal obligor.

- 8 -

> *When the secondary obligor is bound to pay for the debt or answer for the default of the principal obligor to the obligee, the secondary obligor is said to have suretyship status.* (Citation omitted)(emphasis added).

Thus, when SAI/Worldstar, as secondary obligors under the Stock Pledge Agreement, agreed to be bound to answer for the default of Deltec, the principal obligor under the Term Loan Agreement, SAI/Worldstar became sureties for Deltec.  SAI/Worldstar's status as sureties for Deltec is clear from *Chemical Bank*.  Even the majority found that SAI/Worldstar were sureties for Deltec.  Exhibit 1 ¶¶ 117-18.[3]

Equally clear under New York law is the surety's right to be indemnified by the primary obligor to the full extent of the surety's loss.  The surety's right to indemnity is *not* dependent on contract, but arises *by operation of law*.  *Barr v. Hyman Raffle*, 97 A.D. 2d 696 (N.Y. App. Div. 1983).  In *Barr*, the court with no ambiguity explained the duty to indemnify as follows:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, *is entitled to indemnity from the other*.  Where payment by one person is compelled, which another should have made or which redounds solely to the benefit of another, *a contract to reimburse or indemnify is implied by law*.

*Id.* at 696 (citations omitted)(emphasis added).  And, in *Knitzky v. Meyer*, 49 N.Y. 571, 576 (1872), the Court of Appeals stated: "[w]hen one party, at the request of another, enters into a contract as his surety, *the law implies a promise of indemnity.*" (emphasis added).  In *Leghorn v. Ross*, 53 A.D.2d 560, 560 (N.Y. App. Div. 1976), the court stated: "It has long been the rule that *a surety is equitably entitled to full indemnity against the consequences of a principal obligor's*

---

[3] The Petitioners do not dispute SAI/Worldstar's surety status, as they have asked this Court to confirm the findings of the majority.  Petition to Confirm p.1.

*default.*" (citations omitted) (emphasis added).  In *Bank of New York v Hirschfeld*, 59 A.D.2d

976, 976 (App. Div. Third Dept 1977),  the court declared: "It is well established that a surety is

equitably entitled to full indemnity against the consequences of a principal obligor's default."

(citations omitted).  In *Lori-Kay Golf, Inc. v. Lassner*, 61 N.Y.2d 722, 723 (1984), the court

stated: "As a general rule a surety is equitably entitled to full indemnity against the consequences

of a principal obligor's default."

      The Second Circuit, in *Pro-Specialties, Inc. v. Thomas Funding Corp*, 812 F. 2d 797 (2d

Cir. 1987), further explained the primary obligor's duty to indemnify its surety in the context of a

contractual relationship.  In *Pro-Specialties*, the trial court – like the majority in the Final Award

– denied a claim for indemnification because there was no explicit promise by the principal

obligor to indemnify the surety.  *Id*. at 799.  The Second Circuit, relying on New York's long

history of surety law, *rejected the need for an explicit promise to indemnify* – and indeed

instructed the trial court that New York law was precisely to the opposite effect, namely, that

there need be no promise to indemnify as the surety's right to be indemnified by its principal

arose as a matter of law from the surety-principal itself.  *Id*.  The Second Circuit decision in *Pro-*

*Specialties* teaches:

> The general rule is that 'a surety is equitably entitled to full
> indemnity against the consequences of a principal obligor's
> default.'  Here, the trial court dismissed [the surety's] cross-claim
> for indemnification because it found no explicit promise by [the
> primary obligor] to indemnify [the surety].  However, when a
> party agrees to become a guarantor at the behest of the principal
> obligor, *a promise to indemnify -- even though not expressly*
> *provided for in the contract -- is implied by law, unless the*
> *parties have provided otherwise*.  Thus, on remand the district
> court must determine whether the parties explicitly agreed that
> [the primary obligor] would *not* indemnify [the surety].

*Id.* at 799-800 (emphasis added).

The legal principle that a surety's right to indemnification arises by operation of law, and not by contract, is well-defined, explicit and clearly applicable.   Instead of applying applicable New York law, the Final Award turns its back on New York law and refuses to recognize SAI/Worldstar's right to indemnity notwithstanding their undisputed surety status.  Exhibit 1. ¶ ¶ 120, 121.

Importantly, the arbitrators were presented with *Barr v. Hyman Raffle*, *Pro-Specialties, Inc. v. Thomas Funding Corp.*,  *Lori-Kay Golf, Inc. v. Lassner*, *Bank of New York v Hirschfeld*, and *Leghorn v. Ross* by SAI/Worldstar. See SAI/Worldstar's Post Hearing Memorandum annexed to the Cross-Petition as Exhibit 4.  The legal principles from these cases were also discussed and applied in the Dissent.  Exhibit 2 ¶ ¶ 21-28.

The majority arbitrators, in manifest disregard of New York law, dismissed the Second Circuit's declaration in *Pro-Specialties* as mere *dictum*, and stated: "[w]hether the surety has the right to be indemnified from the principal obligor is not to be found from the suretyship status of the secondary obligor…." *Id*. at 122, 127.   In further contravention of New York law, the majority arbitrators declared that the right to indemnification is a question of fact to be ascertained by looking beyond the surety status to the assumptions and expectations of the parties when the contracts were made. *Id*. at ¶ 121.[4]   Thus, the Final Award concludes – in direct contravention of *Barr, Pro-Specialties* and New York law – that because there was no

---

[4] The Final Award, after rejecting SAI/Worldstar's right to indemnity by operation of law, holds that SAI/Worldstar failed to present evidence to establish their entitlement to indemnification.  Of course, under the procedures imposed by the Tribunal, there was no opportunity afforded SAI/Worldstar to present such evidence.  The Tribunal, in Procedure Order No. 2 ¶13, limited the parties to only legal argument on the issue of indemnification.  Procedural Order No. 2 is annexed to the Cross-Petition as Exhibit 5.

express agreement in the 2001 Loan Transaction for Deltec to indemnity SAI/Worldstar,

SAI/Worldstar's indemnification claim fails.

Noticeably absent from the majority arbitrators' opinion is *any* supporting New York

authority for their rejection of SAI/Worldstar's right to be indemnified by Deltec, the primary

obligor.  Instead, the Final Award looks outside of New York and seeks to justify its holding

with citation to a 1918 case from Kansas, a 1932 case from California and a 1934 case from

Minnesota.  Exhibit 1¶ 125 n.177.  No principle of New York law supports the notion – and none

is cited by the majority – that the substantive suretyship law of New York is to be put aside in

favor of isolated and dated case law outside of New York.[5]

The majority arbitrators were required to apply New York law.  They each signed an oath

at the time of their appointment in which they committed to "decide the matters in controversy

between the parties in accordance with [the parties'] arbitration agreement …."  Copies of the

oath signed by the majority are annexed to the Cross-Petition as Exhibit 6.  The arbitration

agreement governing this proceeding directed that New York law shall apply.  Exhibit 1 ¶ 72.

Thus, the application of New York law was the jurisdictional predicate for this proceeding and as

the Second Circuit in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* made it clear, where – as here

– arbitrators fail to follow the agreement of the parties the award is properly vacated under the

Federal Arbitration Act.

---

[5] The cases cited by the majority are not only irrelevant, as they have nothing to do with New York law; but, they are factually inapposite as well in that in each of the cases the decision turned on the fact that the purported surety made the promise to pay the debt of the debtor *without the debtor's knowledge*. *See Leslie v. Compton*, 172 P. 2d 1015 (Kan. 1918); *Holmes v Hughes*, 14 P.2d 149 (Cal. App. 1932); *Indemnity Ins. Co. of North America v. McClure*, 254 N.W. 913 (Minn. 1934).  That is not the case here as Deltec had full knowledge of SAI/Worldstar's pledge of their shares as collateral for Deltec's debt obligation as there was overlapping ownership between SAI/Worldstar and Deltec.

Remarkably, the majority opinion reveals that the majority in fact knew that under New York law a surety's right to indemnification arises by operation of law based solely on the principal-surety relationship.  When explaining "exoneration" and "indemnification" in an "alternative holding", discussed below, the majority arbitrators state – in direct contradiction to their primary holding - that "both claims [ exoneration and indemnification] are closely related under the law of surety, *both arising by operation of law* unless the surety waives such claims or unless the parties agree otherwise, either expressly or implicitly."  Exhibit 1 ¶ 110.[6]  This statement of New York law stands in direct contradiction of the basis for the majority's denial of SAI/Worldstar's indemnity claim.  The majority simply refused to apply this legal principle in violation of their obligation as arbitrators.

The majority's refusal to apply New York surety law constituted manifest disregard of the law as the Second Circuit ruled in *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*  As such the majority exceeded their powers and/or acted so imperfectly in executing them that a mutual, final and definite award was not made within the meaning of Section 10(a)(4) of the Federal Arbitration Act.

**B.  The Majority Arbitrators' Manifest Disregard Of New York Law On Exoneration**

The majority arbitrators, as if implicitly recognizing that their denial of SAI/Worldstar's right to indemnification from Deltec would not withstand the scrutiny of this Court, offered an

---

[6] The majority arbitrators found that SAI/Worldstar did not waive their claim to indemnification. Exhibit 1 ¶ 124. Indeed, the majority arbitrators found that the agreements were silent on this matter, not expressly granting a right to indemnification and not waiving the right.  *Id.*  The majority arbitrators concluded "no such language is to be found because it never crossed the mind of those who entered the November 2001 Agreements…." *Id.*

"alternative holding."  Exhibit 1 ¶¶ 113, 114.[7]  The alternative holding disregards the explicit

distinctions between claims of exoneration and claims of indemnification under New York law.

The alternative holding declares that SAI/Worldstar's right to indemnification was

extinguished by the Stipulation And Order of this Court dated January 21, 2005, entered in Civil

Action No. 05-CV-216 (WMP).  The Stipulation And Order is annexed to the Cross-Petition as

Exhibit 7.  The Stipulation And Order was a consent order dismissing a claim for exoneration.

The Stipulation And Order expressly reserved all other claims, including any future claim for

indemnification.  Exhibit 7.

The pertinent provision of the Stipulation And Order states:

> The dismissal of this action filed January 18, 2005, is hereby amended such
> that the dismissal is with prejudice, each party to bear its own costs,
> expenses, and attorneys' fees, except as provided in paragraph 2 below;
> *however, the dismissal is only a dismissal with prejudice of the "First
> Cause of Action – Exoneration" made in Civil Action No. 05-CV-00216 and
> does not have any affect on any other claim that SAI or Consultora has had,
> now has, or may hereafter have*, against Cardell Financial Corporation,
> Deltec Holdings, Inc., its and their affiliates, subsidiaries, officers, directors
> and/or controlling shareholders.

Exhibit 7 ¶ 1 (emphasis added).  The Stipulation And Order could not have been more clear.  It

dismissed with prejudice *only* the exoneration claim and *reserved* all others.

Notwithstanding the Stipulation And Order's express reservation of all past, present and

future claims with the sole exception of the pending exoneration claim, the majority declares:

> [w]hen Judge Pauley dismissed Respondents' claim for exoneration with
> prejudice *he thereby dismissed all related claims, including their claim for
> indemnification.*  The "other claims" preserved by Judge Pauley's 2006
> [sic] Stipulation and Order were those not barred by claim preclusion, i.e.
> those not relevant here.

---

[7] The majority arbitrators concede the dubiousness of this alternative holding when they characterized their denial of
SAI/Worldstar's right to indemnification as the "more convincing" holding.  Exhibit 1 ¶ 114.

Exhibit 1 ¶ 113 (emphasis added).  This holding by the majority arbitrators not only tramples on the express language in this Court's Order; but, it also disregards the plain differences between exoneration and indemnification under New York law.

Exoneration and indemnification are wholly distinct, mutually exclusive claims. Exoneration is only available *before* the surety suffers the loss, i.e. before the pledged assets are sold.  *Borey v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.*, 934 F. 2d 30, 32 (2d Cir. 1991).  In contrast, an indemnification claim arises only *after* the surety incurs the loss by making the payment.  *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*v. *Fine Host Corp*; 418 F. 3d 168 (N.D.N.Y. 2003).  Judge Learned Hand, in *Admiral Oriental Line v. U.S*., 86 F. 2d 201, 204 (2d Cir. 1936) explained the distinction between exoneration and indemnification, stating:

> As a complaint in an action at law, such a petition would be *premature*; the plaintiff having paid nothing, may not yet call for indemnity.  In equity, however, the rule is otherwise, before paying a debt a surety may call upon the principal to exonerate him by discharging it; he is not obligated to make inroads into his own resources when the loss must in the end fall upon the principal.  (Emphasis added).

Because exoneration and indemnification are separate and distinct claims, the indemnification claim was necessarily reserved in the Stipulation And Order, by the reservation of all claims "that SAI or Consultora has had, now has, or may hereafter have …against Deltec…." Exhibit 7 at ⟋ 1.  Similarly, because SAI/Worldstar's indemnification claim did not arise until after the stipulation was signed by the parties, SAI/Worldstar's indemnification claims were only potential future indemnification claims and were preserved by the express reservation of all claims SAI/Worldstar  "may hereafter have." Exhibit 7 at ⟋ 1.  Thus, contrary to the majority's conclusion, because exoneration and indemnification are distinct claims under New York law, the Stipulation And Order not only did not dismiss SAI/Worldstar's future indemnification claim, it expressly preserved it.

The majority-arbitrators' failure to respect the plain, unambiguous and well-settled distinction between exoneration and indemnification under New York law, like their refusal to apply New York surety law, was knowing – and improper.  That distinction is made plain in *Borey v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, Mid-Hudson Catskill Rural Migrant Ministry, Inc*. v. *Fine Host Corp., and Admiral Oriental Line v. U.S*., cited to the majority by SAI/Worldstar, Exhibit 4 at 29-31, and specifically called to the attention of the majority by Arbitrator Davis, Exhibit 2 ¶18 n.14.  The dissent said it directly: this Court's January 2005 Order dismissing SAI/Worldstar's exoneration claim did not, and could not, terminate SAI/Worldstar's claim for indemnification because the indemnification right did not arise until after the Order was signed by Judge Pauley; therefore by the express reservation in the Order that right was preserved. Exhibit 2 ¶ 18-20.

The majority-arbitrators' refusal to give effect to New York law with regard exoneration and indemnification continues their pattern of manifest disregard of New York law as recognized in *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, and constitutes action exceeding their powers or action that so imperfectly executes their powers that a mutual, final and definite award was not made within the meaning of 9 U.S.C. § 10(a)(4).  Accordingly, the Court should vacate the Final Award.

### III.  The Majority Arbitrators' Determination On Commercial Reasonableness Should Be Vacated As The Product Of A Fundamentally Unfair Proceeding.

The majority arbitrators heard the issue of the commercial reasonableness of Cardell's auction through a fundamentally unfair, one-sided proceeding in which only Cardell was permitted to present testimony, and in which pertinent and material evidence proffered by SAI/Worldstar was denied, in violation of the Federal Arbitration Act, the New York Convention and the AAA Rules.

As framed by the majority arbitrators, the issue of commercial reasonableness was heard by dispositive motion, analogous to a summary judgment motion under the Federal Rules. Exhibit 1 ¶ 5. The only issue, at this preliminary stage of the proceeding, was whether SAI/Worldstar could "raise any issue of fact material to put into question" the reasonableness of Cardell's sale. Exhibit 1 ¶ 102. The procedural and evidentiary rulings of the majority arbitrators, however, affirmatively denied SAI/Worldstar the opportunity to raise an issue of fact and denied SAI/Worldstar a meaningful opportunity to present their case.

Specifically, the procedures set by the arbitrators for resolving the issue of commercial reasonableness permitted only a truncated evidentiary hearing. Exhibit 1 ¶ 6. At the hearing, only one witness was permitted to testify – John Freemen of the investment banking firm Brooks Houghton and Company ("BHC"). *Id.*[8] Mr. Freeman was Cardell's "key witness on the auction." *Id.* No other witness was permitted to testify. SAI/Worldstar were not permitted to present any witnesses, notwithstanding the express command of AAA Rule 30 that provides that the parties must be treated with equality and that each party must be provided the opportunity to be heard and given a fair opportunity to present its case. AAA Rule 30(a).

SAI/Worldstar, before[9], at[10], and after[11] the hearing objected to the majority's action in denying them an opportunity to present evidence. The hearing transcript contains the following exchange:

_____

[8] Mr. Freeman's affidavit was submitted by Cardell in support of its motion for summary judgment. Exhibit 5 ¶10.

[9] Before the hearing, SAI/Worldstar objected in written correspondence to the arbitrators dated November 27, 2007; a copy is annexed to the Cross-Petition as Exhibit 8. SAI/Worldstar also objected before the hearing in their prehearing memorandum; annexed to the Cross-Petition as Exhibit 9 at 2-3.

[10] At the commencement of the hearing, SAI/Worldstar objected. Relevant excerpts of the hearing transcript are annexed to the Cross-Petition as Exhibit 10.

- 17 -

MR. JAFFE: Mr. Chairman, if I might, and I do this so we have this as a matter of record in the proceeding, the proceedings today and the rulings of the Tribunal in Procedural Orders 2 and 3, it seems to me reflect an amalgam of the civil law tradition and the common law tradition. I think that the way that amalgam has been created, it potentially does severe prejudice to our client and we object to it. We recognize that in international arbitrations it's quite customary to have written statements as direct testimony and then to have cross-examination, but that's done on a full record. It's done in the context where we have had the opportunity to present evidence as well. The proceedings that we have sculpted in Procedural Orders 2 and 3 give us no opportunity to present any evidence. Rule 56 of the federal rules, which deals with summary adjudication, which is the analogy that has been used by our colleagues for Cardell and Deltec, quite frankly, contemplates two things –

ARBITRATOR GARRO: Mr. Jaffe, excuse me for interrupting. These points that you're making, you made in writing already. The Tribunal is aware of your complaint about the issue that you feel prejudices –

ARBITRATOR ELSEN: You don't have to say it again.

ARBITRATOR GARRO: And we have taken that into advisement.

* * * *

MR. JAFFE: Mr. Chairman, we're prepared to proceed, but it should be clear on the record that we're proceeding with a full reservation of our rights to object to the truncated nature of the proceeding and the Tribunal's decision that precludes us from offering evidence.

Exhibit 10 at 7-11.

The majority suggests that the prejudice to SAI/Worldstar from being denied an equal

opportunity to present evidence was lessened because SAI/Worldstar were permitted to file the

affidavit of Andres G. Otero.  Exhibit 1 ¶ 8. [12]  This suggestion elevates form over substance.

The "filing" of an affidavit is futile if the tribunal refuses to consider it – and here the majority

---

[11] After the hearing, when the majority announced that they were closing the record of the proceedings, SAI/Worldstar objected by letter to the arbitrators dated April 13, 2009; a copy is annexed to the Cross-Petition as Exhibit 11.
[12] A copy of Mr. Otero's Declaration is attached at Exhibit 12.

refused to consider Mr. Otero's testimony, declaring "that none of the points raised by [SAI/Worldstar] are relevant and material to the issue of commercial reasonableness of the public sale under New York law."  *Id.*  Contrary to the majority arbitrators' claim, Mr. Otero's proffered testimony addressed the core elements of commercial reasonableness as defined by the majority arbitrators and New York law.  It directly challenged the notion that the auction proceedings were commercially reasonable.

The majority arbitrators, quoting the U.C.C., identified the appropriate measures for assessing commercial reasonableness: "*[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable*." Exhibit 1¶ 75 (emphasis in original).  Mr. Otero's proffered testimony focused precisely on the method, manner, time and place of Cardell's sale.

Mr. Otero is an investment banker with 20 years of experience in business and investment transactions in Latin America.  Exhibit 12 ¶ 1.  Mr. Otero reviewed the auction offering materials distributed by Mr. Freeman, as well as related materials.  Exhibit 12 ¶ 8.  Mr. Otero proffered testimony was, based on his experience in Latin America, that Cardell's sale of shares was *not* conducted in a commercially reasonable manner in that "the marketing of the shares was done in a manner that would not generate any substantial investor interest, much less offers to purchase." Exhibit 12 ¶ 11.  Among the deficiencies in the method, manner, time and place of Cardell's sale identified by Mr. Otero were the following:

> • Cardell's selection of New York as the site for the sale of the Deltec shares, a Panamanian company with no holdings in the United States; opining that this chilled investor interest because the sale became subject to the U.S. securities laws with resulting restrictions on resale.  No such restrictions would have arisen if the sale was conducted in Panama, Deltec's country of organization, or Brazil, the site of Deltec's real estate holdings;

- 19 -

- Cardell's presentation of the offering materials in English only; when in Brazil investment banking affairs are conducted in Portuguese;

- Cardell's limited offering period during the Christmas holidays when many Latin American companies have statutory vacations, and businesses slow or close;

- Cardell's conduct of the sale in U.S. currency, when the underlying assets were valued in Brazilian reals and at a time of great volatility in the exchange rate;

- Cardell's reservation of rights to review all bids in advance of the sale, to reject any or all bids without cause, and to select the winning bid on undisclosed factors other than price were procedures – all factors that could render the entire sales process illusory in the eyes of potential bidders;

- Cardell's failure to disclose in the offering material the identify the majority shareholder with whom the buyer would join in the business; and

- Cardell's failure to state whether the minority buyer(s) would have seats on the Board of Directors and whether the buyer(s) would obtain tag-along rights or other rights in the event the majority sold its shares at a future date.

Exhibit 12 ¶¶ 12 – 15.

As the majority correctly observed, New York law requires an assessment of the method, manner, time and place of sale.  Mr. Otero's proffered testimony addressed these specific issues. There was no colorable basis for the majority to exclude Mr. Otero's testimony.  Mr. Otero's testimony related directly to the circumstances of the sale and the diminution of prospective investor interest and sales price because of, *inter alia*, Cardell's conduct of the sale in New York; Cardell's conduct of the sale in U.S. currency; Cardell's use of offering materials only in English; Cardell's timing of the sale during the Christmas and year-end holidays; Cardell's failure to disclose the identification of the majority shareholder; Cardell's failure to identify whether shareholder rights would exits for the buyer of the shares; and, Cardell's inclusion of reservations of rights that could make the entire sales process illusory.

The rejection of the Otero proffer is all the more remarkable – and egregious – as the majority conceded that Mr. Otero's proffered testimony "puts into question Cardell's business judgment as to the 'time, place and manner' of the bidding and sale process." Exhibit 1 ¶¶ 8, 59, 97.

In striking contrast to their treatment of Mr. Otero's proffered testimony, the majority accepted and relied on the testimony of Mr. Freeman on the same or similar factors.  For example, the majority credited Mr. Freeman's testimony extensively, including his testimony that the lack of bidder interest occurred because of litigation involving the shares; that Cardell started the bidding process three weeks before the Christmas holidays; and that the underlying due diligence and the letters of introduction were in Portuguese even if the offering materials were not.  Exhibit 1 ¶¶ 50 n.62, 97 n.125, 97 nn.128-29, 130-31.  There is no colorable basis upon which to exclude Mr. Otero's criticisms of the time, place and manner of sale, when the self-serving testimony of Mr. Freeman justifying the lack of bidder interest and the lack of a fair market price resulting from his sales effort was accepted and deemed sufficient to warrant summary judgment.

This unequal treatment of SAI/Worldstar and Cardell on the core legal issues relating to the elements of commercial reasonableness under New York law, standing alone, is grounds for vacating the Final Award.  AAA Rule 30(a) required equal treatment and a meaningful opportunity to be heard, and the parties' agreement to arbitrate expressly required that this proceeding be governed by the AAA Rules.  Exhibit 1  ¶¶ 72, 73.[13]

---

[13] The majority's refusal to accept Mr. Otero's testimony was all the more prejudicial because this matter was decided on a summary judgment motion.  Exhibit 1 ¶ 5.  On summary judgment, SAI/Worldstar was entitled to have the factual record viewed in the light most favorable to SAI/Worldstar as the non movant.  The admission of  Mr.

Moreover, the Federal Arbitration Act specifically recognizes that it is appropriate to vacate an arbitration award when the arbitrators refuse to hear evidence "pertinent and material to the controversy."  9 U.S.C. §10(a)(3).  The Second Circuit in *Tempo Shain Corp. v Bertek, Inc*., 120 F. 3d 16, 20 (2d Cir. 1997) made it clear that this Court is to review *de novo* excluded evidence, such as the excluded testimony of Mr. Otero, to determine whether the majority arbitrators improperly excluded evidence "pertinent and material to the controversy." Section 10(a) (3) of the Federal Arbitration Act, 9 U.S.C. §10(a) (3).

The Second Circuit also made clear that Section 10(a)(3) of the Federal Arbitration Act requires, at a minimum, that arbitrators "give each of the parties to the dispute an adequate opportunity to present its evidence and argument."  *Tempo Shain Corp. v Bertek, Inc*., 120 F. 3d at 20 (citations omitted).  Similarly, Article V(1)(b) of the New York Convention requires that each party be provided an opportunity to be heard in a meaningful way.  *Iran Aircraft Ind. v. Avco Corp*, 980 F.2d at 146-47.  There can be no dispute that SAI/Worldstar were denied a meaningful opportunity to present their case when they were denied the right to present witnesses and their proffered written testimony was wrongfully rejected.

The majority not only denied SAI/Worldstar their right to a fair hearing, but -- notwithstanding the length of the Final Award – the majority failed to evaluate the substance of the commercial reasonableness dispute, and thereby failed to fulfill their mandate under the arbitration agreement.  Arbitrator Davis showed in his dissent, because this sale involved self-dealing,  a low sales price and the lack of any actual cash payment, the sale was even more

---

Otero's  testimony would have established genuine issues of material fact in the record; thus, precluding summary judgment.

suspect under New York law and required – at a minimum - a hearing and closer scrutiny of the fairness of each aspect of the sale. Exhibit 2 ¶¶ 4-7.[14]

Close scrutiny of the Final Award shows that instead of evaluating the reasonableness of the means and methods of the sale as mandated by New York law, the majority arbitrators wrongly *deferred* to Cardell's "business judgment" on these matters. Exhibit 1 ¶ 59. The majority dismissed Mr. Otero's proffered testimony that other sales procedures could have rendered a higher sales price, stating that it was "Cardell's *clear prerogative to decide where* to sell the shares." Exhibit 1 ¶ 97. The majority dismissed Mr. Otero's other criticisms, stating that even if Mr. Otero's alternatives were correct, they merely point to "*plausible choices* made by Cardell, *whether or not they were subject to disagreement*." *Id* (emphasis added).[15] By failing to accept and evaluate evidence critical of Cardell's conduct of sale and by deferring to Cardell's "business judgment", "prerogative" and "plausible choices," the majority eviscerated their duty to address the controversy submitted to arbitration, i.e. to make an independent assessment of whether there were facts relating to the means, methods, time and place of sale that raised a genuine dispute of whether the auction was commercially reasonable under New York law. The majority, in effect, accepted testimony in favor of commercial reasonableness and excluded all testimony of unreasonableness, and then concluded that there was no genuine issue of material fact – a conclusion dictated by the majority's one-sided proceeding.

---

[14] The self-dealing in this sale is reflected by the fact that Cardell was both seller and buyer. The low sales price is reflected by the sale for $2.5 Million when the prepared offering materials assessed a value of approximately $24 Million. Exhibit 2 ¶¶ 5,6. The sale is even more suspect because no money changed hands. Cardell did not pay anything for the shares, it merely reduced the level of debt owed to it by Deltec by this amount. Exhibit 2 ¶ 5 n.4.
[15] The majority's recognition that Mr. Otero's testimony established that the means and methods of sale selected by Cardell were subject to disagreement, standing alone, is proof that a genuine issue of material fact existed and, at this stage of the arbitration, a genuine issue of material fact was all that was necessary to deny the dispositive motion and to proceed to a full evidentiary hearing. Exhibit 1 ¶ 102.

The controversy in this arbitration was not whether Cardell exercised some discretion under a "business judgment" rule or whether Cardell properly elected among "plausible choices." The ultimate issue was whether the choices made by Cardell were commercially reasonable.  And the issue at this stage of the proceeding - on summary disposition - was whether there were facts that raised a genuine dispute about whether the auction was commercially reasonable under New York law.  The proffered – and rejected testimony – raised, *inter alia*, the following questions:   Was it reasonable to conduct the sale in New York?  Was it reasonable to conduct the sale in U.S. currency?  Was it reasonable to conduct the sale over the Christmas and year-end holidays?  Was it reasonable to not prepare and distribute solicitation material in Portuguese?  Mr. Otero's proffered testimony said it was not.

New York law required an independent assessment of the time, place, manner and method of sale – and the majority acknowledged this requirement.  Exhibit 1 ¶¶ 75-76.  The majority, however, refused to carry-out that independent assessment.  Instead, contrary to New York law, the majority applied a business judgment review deferring to Cardell's decisions as "plausible choices" even if "subject to disagreement," and excluding consideration of testimony critical of Cardell's conduct as neither relevant nor material.

The majority's refusal to accept evidence from SAI/Worldstar on the very factual inquiry at issue, and the majority's refusal to conduct an independent assessment of the time, place, manner and method of sale, were contrary to New York law as well as fundamental fairness guaranteed by the New York Convention and the Federal Arbitration Act, and denied SAI/Worldstar a proceeding that was in accord with New York's substantive and procedural principles and the Federal Arbitration Act.  As such the majority arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject

- 24 -

matter was not made, within the meaning of Section 10(a)(4) of the Federal Arbitration Act, requiring vacating of the award.

<u>**CONCLUSION**</u>

The Final Award is the product of a series of procedural and substantive rulings that denied SAI/Worldstar their right to a fundamentally fair hearing.  The majority arbitrators denied SAI/Worldstar their right to an arbitration decided under New York law, their right to an arbitration under the procedural safeguards of the AAA Rules, their right to present pertinent and material evidence under the Federal Arbitration Act, and their right to a meaningful opportunity to be heard under the New York Convention, the Federal Arbitration Act, the AAA Rules and the fundamental concepts of due process.  For each of these reasons, the Final Award should be vacated.

Accordingly, SAI/Worldstar respectfully request that the Court deny the Petitioners' petition to confirm the Final Award and grant SAI/Worldstar's cross-petition to vacate the Final Award.

Respectfully submitted,

/S_Eric Fishman_____
Eric Fishman
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, New York 10036-4039
Telephone:  (212) 858-1745
Facsimile:   (212)  858-1500
Email:  eric.fishman@pillsburylaw.com

*Counsel for Respondents/Cross Petitioners*
*Suchodolski Associates, Inc. and Consultora*
*Worldstar S.A.*

*Of Counsel*
Michael Evan Jaffe
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037-1122
Telephone: (202) 663-8068
Facsimile: (202) 663-8007
Email: michael.jaffe@pillsburylaw.com

David L. Kelleher
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W.
Washington, D.C. 20036
Telephone: (202) 457-1685
Facsimile: (202) 457-1678
Email: dkelleher@jackscamp.com