PILLSBURY WINTHROP SHAW PITTMAN LLP
Eric Fishman, Esq.
1540 Broadway
New York, NY  10036
Telephone:  (212) 858-1000
Facsimile:  (212) 858-1500

Michael Evan Jaffe, Esq.
Deborah B. Baum, Esq.
2300 N Street, N.W.
Washington D.C.  20037-1122
Telephone:  (202) 663-8068
Facsimile:   (202) 354-5261

*Attorneys for Beno Suchodolski*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
| | |
|---|---|
| CARDELL FINANCIAL CORP. and DELTEC HOLDINGS, Inc., | ) ) ) |
| Petitioners, | ) ) |
| v. | ) |
| SUCHODOLSKI ASSOCIATES, INC. and CONSULTORA WORLDSTAR S.A., | ) ) ) ) |
| Respondents. | ) ) |
| CARDELL FINANCIAL CORP. and DELTEC HOLDINGS, Inc., | ) ) ) |
| Petitioners-Movants, | ) ) |
| and | ) ) |
| ANASTÁCIO EMPREENDIMENTOS IMOBILIÁRIOS E PARTICIPAÇÕES LTDA. and COMPANHIA CITY DE DESENVOLVIMENTO, | ) ) ) ) |
| Additional Movants on the Contempt Motion, | ) ) ) |
| v. | ) ) |

Case No. 09-CIVIL-6148 (VM)

| | |
|---|---|
| CONSULTORA WORLDSTAR S.A., | ) |
| | ) |
| Respondent on the | ) |
| Contempt Motion, | ) |
| | ) |
| and | ) |
| | ) |
| ESTATE OF NELSON BAETA NEVES and | ) |
| BENO SUCHODOLSKI, | ) |
| | ) |
| Additional Respondents on | ) |
| the Contempt Motion. | ) |
| | ) |

**FURTHER REPLY IN SUPPORT OF**
**OPPOSITION OF BENO SUCHODOLSKI MOTION FOR CONTEMPT**

Pursuant to the leave granted by the Court, Beno Suchodolski, by his undersigned counsel, respectfully submits the Declaration of Marcio Antonio Bueno in Support of his Opposition to Motion for Contempt. Mr. Bueno's Declaration is attached to this Further Reply Memorandum as Exhibit A.[1]

After briefing was concluded in this matter, Cardell filed a number of submissions that included new – but out of context, potentially misleading – information regarding Mr. Suchodolski. The clear intent of the submissions is to lead the court to conclude that Mr. Suchodolski played a role in the commencement of the Brazilian litigation. Cardell's submissions focus on the allegation that Cardell representatives had discussions with Mr. Suchodolski regarding a proposed settlement of the Neves' case against the Cardell interests.

As a threshold matter, the record as it stands – including the recent submissions – does not come close to demonstrating that Mr. Suchodolski had any association at all with the instigation of the lawsuit. And it certainly does not prove his involvement with

---

[1] The original of Mr. Bueno's Declaration is available for inspection by the Court or Counsel for the Petitioners upon request.

the required "clear and convincing" evidence necessary to hold Mr. Suchodolski, a non-party, in contempt for violating an anti-suit injunction.  Cardell has yet to submit even an iota of evidence suggesting that Mr. Suchodolski had any involvement in the decision to file or the filing of the Neves litigation – except to the extent that he affirmatively admonished the Neves interests *not* to file any proceeding at odds with this Court's injunction.  A copy of the Court's injunction was supplied to the Neves' Brazilian counsel.

Beyond that, even to the extent that they purport to reflect further circumstantial evidence or innuendo, the recent declarations are misleading when understood in the context of certain important information that was omitted.  First, from reading the Akhund and Castro Declarations alone, one would never know that – as is the case – Mr. Castro affirmatively sought out Mr. Suchodolski to see if he could intercede on Cardell's behalf to try to help get the Neves matter resolved.  And, Mr. Suchodolski only agreed to speak to Mr. Castro after confirming through Mr. Akhund that this contact was authorized.

Moreover, as set forth in the attached Declaration of Mr. Marcio Antonio Bueno, Mr. Suchodolski had an independent financial interest, aligned with the Cardell interest, in having the Neves litigation in Brazil ended.  As the Declaration explains, Mr. Suchodolski owns a substantial interest in a parcel of land in São Paulo, adjacent to a larger parcel that a Cardell entity (Anastacio) owns.  The City of São Paulo has announced its intention to take/expropriate both parcels.  As Mr. Bueno explains, both Mr. Suchodolski and Cardell share an interest in maximizing the value that the City places on the contiguous land and in expediting the payment of compensation by the City for the takings.  Indeed, in their moving papers, Cardell affirmatively alleged that an

important aspect of the harm that the Brazil litigation is causing Cardell is to hinder the receipt by Anastacio/Cardell of the City of São Paulo's payment for the expropriated land, which they estimate to be valued at $190 million.  (Declaration of Luiz E.A. Muller Filho at ¶26.)  (Notably, Cardell did not mention that Mr. Suchodolski's company owned a contiguous parcel that could be similarly affected.)

In light of these parallel interests, Mr. Bueno, a partner in the law firm Suchodolski Advogados Associados, has been dealing with Mr. Castro as Cardell's representative in São Paulo, cooperatively to try to help navigate the matter through the City's process to the parties' mutual benefit.  During the course of those dealings, Mr. Castro asked Mr. Bueno whether Mr. Suchodolski would agree to speak to Mr. Castro to discuss the Neves' Brazilian litigation.  As Mr. Castro explained to Mr. Bueno, Cardell had a difficult time getting the Neves family to speak to its representatives, and wished to enlist Mr. Suchodolski's help, if possible.  Mr. Bueno also explains that it was in Mr. Suchodolski's interest to have the Neves matter resolved, as it that litigation could delay a resolution of the condemnation, not only of the Anastacio parcel, but of the parcel in which the Mr. Suchodolski holds a substantial interest.

The Bueno Declaration brings forward the context of Mr. Suchodolski's interest in securing a resolution of the Neves lawsuit.  In short, it was in Mr. Suchodolski's personal financial interest, and coincidently Cardell's, that the condemnation proceedings be resolved promptly rather than lingering on.  To the extent that the parties believed that settling the Neves lawsuit might advance that resolution, Mr. Suchodolski shared that interest with the Cardells.

In sum, Mr. Castro affirmatively sought out Mr. Suchodolski's participation in a discussion regarding a potential settlement of the Neves litigation, which settlement Mr.

403188487v3

Castro knew could be of interest to Mr. Suchodolski in connection with the City's condemnation action. Mr. Akhund confirmed that this contact was appropriate and authorized by Cardell. Then, when Mr. Suchodolski ultimately agreed to meet with Mr. Castro, Messrs. Castro and Akhund use the fact of that meeting in support of a motion to hold Mr. Suchodolski in contempt. This gamesmanship is unseemly to say the least, and it by no means satisfies the Cardell's burden to present "clear and convincing" evidence of misconduct.

For the reasons set forth in Mr. Suchodolski's Opposition to Cardell's Motion and Sur-reply, as supplemented by the above described Declarations, Respondent Beno Suchodolski respectfully asks that the Motion for Contempt be denied.

Dated: November 15, 2011                    Respectfully submitted,

/S Eric Fishman
Eric Fishman
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
Telephone: (212) 858-1745
Facsimile: (212) 858-1500
Email: eric.fishman@pillsburylaw.com
*Counsel for Additional Respondent
Beno Suchodolski*

*Of Counsel*
Michael Evan Jaffe
Deborah B. Baum
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, DC 20037-1122
Telephone: (202) 663-8068
Facsimile: (202) 354-5261
Email: michael.jaffe@pillsburylaw.com
Email: deborah.baum@pillsburylaw.com

403188487v3

# EXHIBIT A

## Affidavit

I, Marcio Antonio Bueno, declare under penalty of perjury of the laws of the United States of America, for all legal purposes, that I am counsel to Suchodolski Advogados Associados, a law firm in São Paulo, Brazil. In that position I have acted for a company known as Pirima Ltda, which owns an interest in a large parcel of land in the city of São Paulo. Beno Suchodolski is the majority shareholder of Pirima. Another larger parcel adjacent to the Pirima parcel is a property owned by a company known as Anastácio.

The City of São Paulo, Brazil announced publicly by decree that it had an interest in condemning both the Pirima Ltda. and the Anastácio parcels. Acting on behalf of Pirima Ltda., I contacted the municipal employees charged with the condemnation efforts to discuss the possibility of agreeing upon the terms of the condemnation and, if possible, the compensation to be paid to Pirima Ltda. for its property.

At the same time that I was having discussions with the municipal employees, negotiations with the City Hall of São Paulo were also being conducted by Dr. Luiz Fernando Martins Castro, who was acting as the attorney for the company Anastácio. Considering that he and I are professional colleagues, we have exchanged information and have had discussions on a regular basis concerning the strategies which might allow us to push the settlement value of the two properties as close to the market value as possible. We agreed that it would be to the mutual interests of our clients if we aligned our stances *vis-à-vis* the City Hall to present a united front for the benefit of both Pirima Ltda. and Anastácio.

Dr. Luiz Fernando Martins Castro asked me at one point to talk in person with my client's principal, Dr. Beno Suchodolski, regarding another issue, namely the dispute of Dr. Nelson Baeta Neves' heirs with DELTEC/Anastácio. When I presented the request to Dr.

Suchodolski, he replied that he did not want to converse with Dr. Castro without confirmation from Mr. Erik Akhund that Dr. Castro was authorized by him to broach this topic. I relayed this requirement to Dr. Castro. I was advised that soon after my discussion with Dr. Castro, Mr. Erik Akhund called Dr. Suchodolski to tell him that Dr. Castro was indeed authorized to discuss with him such matters on behalf of the companies controlled by Cardell.

Afterward, Dr. Castro came to the offices of Suchodolski Advogados Associados on two occasions to meet with Dr. Suchodolski. The two meetings with Dr. Castro took place in the offices of Suchodolski Advogados Associados. Further conversations were between Dr. Castro and myself, as we handled the condemnation issues with the City Hall.

Dr. Suchodolski informed me that Dr. Castro asked him to intervene before the Baeta Neves family to know if there was an opening for him to talk with the Neves family, who apparently showed no willingness to talk with Cardell regarding a possible settlement. From the point of Pirima Ltda., it could be a benefit if the issues between the Baeta Neves family and the Cardell interests were settled. This is because a delay in resolving condemnation of the Anastácio parcel could result in the City Hall waiting to finalize the condemnation of the property owned by Pirima Ltda. For this reason it was sensible to me for Dr. Suchodolski to have conversations with Dr. Castro. Those conversations, I have learned both from Dr. Suchodolski and Dr. Castro, did not result in a resolution of the issues between the Baeta Neves family and Anastácio (Cardell).

---
MARCIO ANTONIO BUENO
Enrolled before the Brazilian Bar Association (OAB/SP) under n. 26.953

# CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November 2011, I caused a true copy of the foregoing to be filed electronically through the Court's CM/ECF System and thereby served on counsel for Petitioners, who are registered users. In addition, true copies of the foregoing were served on counsel for Petitioners by first-class mail, postage prepaid, to the following:

>John M. O'Connor
>Costa Kensington
>Helen J. Williamson
>Anderson Kill & Olick, P.C.
>1251 Avenue of the Americas
>New York, NY  10020
>*Counsel for Petitioners*
>    and
>Marc J. Goldstein
>Marc J. Goldstein Litigation & Arbitration Chambers
>1230 Avenue of the Americas, 7th Floor
>New York, New York 10020
>*Counsel for Consultora Worldstar S.A. and*
>  *The Estate of Nelson Baeta Neves*

/S   Eric Fishman

403188487v3