UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X

CARDELL FINANCIAL CORP.
et al.,

              Petitioners-
        Cross-Respondents,

   - against -

SUCHODOLKSI ASSOCIATES, INC.
et al.,

            Respondents-
        Cross-Petitioners.

------------------------------X

09 Civ. 6148 (VM)

**DECISION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/28/12

**VICTOR MARRERO, United States District Judge.**

On May 24, 2010, this Court entered an amended judgment affirming an April 28, 2009 arbitration award (the "Arbitration Award") obtained by petitioners Cardell Financial Corporation, Deltec Holdings, Inc., Anastácio Empreedimentos Imobiliáros e Participações Ltda., and Companhia City de Desenvolvimento (collectively, "Petitioners") against respondents Suchodolski Associates, Inc. ("SAI") and Consultora Worldstar S.A. ("Worldstar"). (Docket No. 34, the "Amended Judgment.") The Amended Judgment prescribed injunctive relief, set forth in the Arbitration Award, prohibiting Suchodolski, Worldstar and certain affiliated individuals – including Beno Suchodolski[1]

---

[1] Suchodolski, like his wife and certain other relations, is a principal of SAI.

("Suchodolski") and Nelson Baeta Neves[2] ("Neves") – from prosecuting or assisting in the prosecution of any arbitration or legal action against Petitioners and related entities regarding three agreements addressed in the Arbitration Award (the "Underlying Agreements").

On July 28, 2011, Petitioners moved the Court to adjudge Worldstar, Suchodolski and the Estate of Neves (the "Neves Estate") in contempt of the Amended Judgment. (Docket No. 42, the "Contempt Motion.") The Court referred the Contempt Motion to United States Magistrate Judge Michael H. Dolinger (Docket No. 51) and the parties submitted briefs on the issues raised. On September 15, 2011, Worldstar cross-moved to compel arbitration. (Docket No. 67, the "Cross-Motion.") The parties briefed the Cross-Motion before Magistrate Judge Dolinger as well.

On July 17, 2012, Magistrate Judge Dolinger issued an exhaustive and well-reasoned Order and Report and Recommendation, (Docket No. 102, the "Report"), to which Petitioners, Suchodolski, Worldstar and the Neves Estate each now object. Upon a full de novo review of the factual record in this litigation, including the parties' respective papers filed in connection with the Contempt

---

[2] Prior to his death on June 9, 2010, Neves was the owner of Worldstar.

Motion and the Cross-Motion, their objections to the Report, the Report itself and applicable legal authorities, the Court concludes that the findings, reasoning, and legal support for the conclusions presented in the Report are warranted and, substantially for the reasons set forth in the Report, adopts those conclusions in their entirety as the Court's own decision in this matter.

## I.   BACKGROUND

The Court assumes familiarity with the history of this litigation in general and with the recitation of that history provided by Magistrate Judge Dolinger in particular. (See Report, Docket No. 102, at 3-24.) As no party has challenged the Report's factual exposition, the Court, upon a review of the full record, adopts that portion of the Report without alteration. The following recapitulation of certain of those factual findings is provided for immediate context and reference.

The Report describes, in detail, two Brazilian lawsuits that Petitioners argue violate the injunctive portions of the Amended Judgment: the Worldstar Lawsuit and the Neves Lawsuit. (See Report, Docket No. 102, at 19-22.)

The Worldstar Lawsuit was commenced by Worldstar against several of the Petitioners, and sought repayment of a loan provided to another party so that party could participate in the transaction effected by the Underlying Agreements.

The Neves Lawsuit was brought by Neves, less than two weeks before his death, as a declaratory judgment action in Brazil against several Petitioners. The Neves Lawsuit asked the Brazilian court to declare null the Arbitration Award and the injunctive portion of the Amended Judgment. After Neves' death, the Neves Estate amended the complaint to remove the request to declare ineffective the injunctive portion of the Amended Judgment. On September 16, 2011, the Brazilian court dismissed the entire Neves Lawsuit.

## II.  DISCUSSION

### A.  LEGAL STANDARD

A district court evaluating a magistrate judge's report may adopt those portions of the report addressing non-dispositive matters as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); see also Thomas v. Arn, 474 U.S. 140, 149 (1985) (citation omitted). The Court is not

required to review any portion of a magistrate judge's report that is not the subject of an objection. See id. at 150-53. When a magistrate judge rules on a dispositive issue, and "[w]here a party makes a 'specific written objection' . . ., however, the district court is required to make a de novo determination regarding those parts of the report." Cespedes v. Coughlin, 956 F. Supp. 454, 463 (S.D.N.Y. 1997) (citing Fed. R. Civ. P. 72(b); United States v. Raddatz, 447 U.S. 667, 676 (1980)); see also Fed. R. Civ. P. 72(b)(3). Because motions for contempt require a final determination of whether a party's actions are prohibited by court order and are "independent and collateral proceedings for the purposes of appellate jurisdiction," Kiobel v. Millson, 592 F.3d 78, 87 (2d Cir. 2010) (Cabranes, J., concurring) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990)), a district court's review of a magistrate judge's determination of a civil contempt motion should be evaluated under the de novo standard applicable to dispositive matters under Federal Rule of Civil Procedure 72(b), as opposed to the clearly erroneous or contrary to law standard applied to magistrate judges' rulings as to non-dispositive matters under Rule 72(a). See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900

F.2d 522, 525-26 (2d Cir. 1990) (discussing sanctions under Federal Rule of Civil Procedure 37 and indicating that magistrate judge's order of monetary sanction is non-dispositive but that order of other sanctions could be dispositive); but see Whitfield v. Imperatrice, No. 08 Civ. 3395, 2011 WL 864703, at *1, *7 (E.D.N.Y. Mar. 9, 2011) (treating magistrate judge's recommendation to deny motion for contempt as non-dispositive without explanation).[3] "Matters concerning discovery," on the other hand, "generally are considered 'nondispositive' of the litigation." Thomas E. Hoar, 900 F.2d at 525.

A district judge may accept, set aside, or modify, in whole or in part, the findings and recommendations of a magistrate judge. See Fed. R. Civ. P. 72(b); DeLuca v. Lord, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994).

B.   THE PARTIES' OBJECTIONS

   1.   Petitioners' Objection

Petitioners object to the Report's conclusion that the Neves Estate was not in contempt of the Amended Judgment because, they assert, that conclusion was based on the

---

[3] The Court notes that Magistrate Judge Dolinger ordered both monetary penalties and injunctive relief – requiring Worldstar to withdraw the Worldstar Lawsuit and pay certain penalties. Because such relief could be considered dispositive of the contempt questions, the Court reviews those aspects of the Report under a de novo standard. However, because the Court ultimately concurs with the Report's conclusions, the Court would also, of course, adopt the Report under a less stringent clearly erroneous or contrary to law standard.

misimpression that the Neves Lawsuit had been dismissed and would not proceed further.   Petitioners argue that, in refusing to find the Neves Estate in contempt, "Magistrate Judge Dolinger was influenced by the impression that the [Neves Lawsuit] had been terminated," that this "impression was inaccurate." (Petitioners' Objections, Docket No. 113, at 1.)

The Amended Judgment prohibited Neves (and now prohibits his estate) from prosecuting any action "relating to" the Underlying Agreements.   The Neves Lawsuit sought to invalidate the Amended Judgment; it did not directly address the Underlying Agreements.   Because the Neves Estate would be free to assail the Underlying Agreements if the Neves Lawsuit were successful, Petitioners assert that the Neves Lawsuit, as a functional matter, relates to the Underlying Agreements and therefore represents a violation of the Amended Judgment.

Magistrate Judge Dolinger rejected that argument and found that the Amended Judgment did not prohibit the Neves Lawsuit because the action sought to invalidate the Amended Judgment itself, not to litigate the Underlying Agreements directly.

## 2.    Objections of Worldstar and the Neves Estate

Worldstar and the Neves Estate have set forth a myriad of objections to the Report.[4]  Worldstar objects to (1) the Magistrate Judge's denial of the Cross-Motion and (2) the Report's recommendation that Worldstar be held in contempt. The Neves Estate objects to the Report's finding that this Court has personal jurisdiction over it and that the Amended Judgment's injunction is applicable to the Neves Estate.

### a.    Denial of the Cross-Motion

Worldstar argues that Magistrate Judge Dolinger erred by refusing to refer the issues presented in the Contempt Motion to arbitration.    That ruling constituted error, according to Worldstar, because Petitioner's motion for contempt alleged that Worldstar also violated a subordination agreement which prohibited certain enforcement actions and required arbitration of disputes out of that agreement. Relatedly, Worldstar contends that, because the Amended Judgment confirmed the resolution set

---

[4] The Court accommodated a request for additional time by counsel for Worldstar and the Neves Estate and allowed for a one-week extension of the deadline by which objections to the Report were due.   (See Docket No. 115.)   Despite this courtesy, Worldstar and the Neves Estate have ignored the Court's prior order and submitted objections totaling 41 pages, over four times the page limit established by the Court.   (See Docket Nos. 111 & 116.)   Nonetheless, the Court has fully considered the objections of Worldstar and the Neves Estate as set forth in their unnecessarily excessive submission.

forth in the Arbitration Award, the dispute over the effect of that resolution was likewise subject to mandatory arbitration.   Worldstar contends that the Report's refusal to refer the contempt issues to arbitration was contrary to law because there was a dispute as to the arbitability of those issues, and therefore the Court should have referred the question to an arbitral tribunal to determine whether the issues were ultimately subject to arbitration.

    b.   Finding Worldstar in Contempt

After presenting - at superfluous length and in repetitive form - its objections to the Report's refusal to order arbitration, Worldstar also objects to the Report's conclusion that it acted in contempt of the Amended Judgment.   The crux of Worldstar's argument is that because the Amended Judgment merely adopted the relief described in the Arbitration Award, the arbitration panel's understanding - and not that of the Court - governs the meaning of the phrase "relating to" as employed in the Amended Judgment.   Thus, Worldstar argues that, because the injunctive relief in the Amended Judgment was based upon the recommendations of the Arbitration Award, the scope of "relating to" should have been referred to an

arbitration panel to divine the original arbitrators' understanding of that phrase.

### c.   Objections of the Neves Estate

The Neves Estate advances a litany of reasons why it disputes the Report's finding of personal jurisdiction over it.   The Neves Estate objects to (1) the reference date employed by Magistrate Judge Dolinger in his personal jurisdiction analysis; (2) the finding that Worldstar was Neves' alter ego; and (3) the finding that long-arm jurisdiction over the Neves Estate existed because Worldstar was Neves' agent.   At bottom, each of the Neves Estate's objections to the Report's findings on personal jurisdiction amount to a disagreement with Magistrate Judge Dolinger's assessment of the facts presented.   The Neves Estate argues that Magistrate Judge Dolinger drew improper conclusions from those facts and that, as such, this Court should arrive at the Neves Estate's preferred inferences.

The Neves Estate also objects to the finding that the Amended Judgment is applicable against the Neves Estate under the doctrine of law of the case, res judicata and Federal Rule of Civil Procedure 65.

### 3.   Suchodolski's Objection

Suchodolski objects to that portion of the Report which granted Petitioners' request to engage in certain discovery aimed at determining whether and in what manner Suchodolski participated in the Worldstar and Neves Lawsuits. Petitioners argued to the Magistrate Judge that more information was required to determine whether Suchodolski was in contempt of the Amended Judgment.

Suchodolski disputes neither the standard Magistrate Judge Dolinger employed to evaluate contempt nor his conclusion that to merit discovery, Petitioners must state a prima facie case of contempt. Suchodolski argues, rather, that Magistrate Judge Dolinger misapplied the prima facie standard by requiring only a probability that discovery may lead to facts that could satisfy the clear and convincing standard for a finding of contempt. Suchodolski characterizes the basis for Petitioner's prima facie case as rampant speculation and faults Magistrate Judge Dolinger for failing to require Petitioners to allege facts that, if uncontroverted, would support a clear and convincing demonstration of contempt.

-11-

C.   ANALYSIS

1.   Petitioners' Objection

Petitioners' objection to the finding that the Neves Lawsuit is not related to the Underlying Agreements is unpersuasive and the Court, upon its own review of the relevant facts on the record of this proceeding, now affirms and adopts as its own decision Magistrate Judge Dolinger's reasoning supporting his finding that the Neves Estate was not in contempt of the Amended Judgment.

The Court disagrees with Petitioners' characterization of Magistrate Judge Dolinger's reasoning. Magistrate Judge Dolinger's narrow reading of the injunctive language in the Amended Judgment does not appear to be based upon the procedural posture of the Neves Lawsuit. Rather, the narrow reading was based – and properly so – on the import of the relief sought by the Neves Lawsuit.

Strictly speaking,[5] the injunctive language at issue does not clearly and unambiguously bar the prosecution of

---

[5] In evaluating a motion for contempt, the Court must construe the breadth of injunctive relief in the manner most favorable to the alleged contemnor. See Drywall Tapers and Pointers of Greater N.Y., Local 1974 of I.B.P.A.T. AFL-CIO v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n, 889 F.2d 389, 400 (2d Cir. 1989) (Mahoney, J., concurring in part and dissenting in part) ("The longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt." (internal quotation and alteration omitted)); A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000) (same).

-12-

the Neves Lawsuit because that action does not relate to the Underlying Agreements.

As the Magistrate Judge held, the Neves Lawsuit was not related to the Underlying Agreements because its aim was to collaterally attack the Arbitration Award and Amended Judgment. As Magistrate Judge Dolinger noted, this effort may be futile and entirely inappropriate for a host of reasons; that, however, does not render it contemptuous. If the Neves Estate were to successfully convince a Brazilian court to declare the Amended Judgment a nullity, such a result would merely pave the path for a subsequent lawsuit seeking an adjudication of rights under the Underlying Agreements. Prosecution of that subsequent lawsuit, of course, would necessarily run afoul of the Amended Judgment and such an act would render the Neves Estate in contempt. That, however, is not this case.

Though Petitioners point to several cases broadly construing the term "relating to" – and in a manner which would certainly capture the Neves Lawsuit if employed here – Magistrate Judge Dolinger properly interpreted the phrase narrowly because it was used in the context of injunctive relief. In none of the cases cited by Petitioners, however, was the term "relating to" or similar language

-13-

evaluated in the context of an injunctive order. (See Petitioners' Objections, Docket No. 113 at 7 (citing cases).) Rather, those cases interpreted statutes, contract clauses or bankruptcy plan documents. Because the interpretation of injunctive orders implicates the scope of judicial power to limit litigants' otherwise legal activities, injunctive orders, unlike those categories of documents, must be construed narrowly to ensure that parties restricted by such orders are on notice as to what conduct the order prohibits. See Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 145 (2d Cir. 2010)("A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." (quoting King v. Allied Vision Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). Magistrate Judge Dolinger correctly applied that basic precept.

Because "relating to" in the Amended Judgment is amenable to being read in two different ways, it is ambiguous and the Neves Estate cannot be held in contempt for its violation of only one of those possible meanings when its conduct would have been permissible under the

-14-

other.  The Court, therefore, concurs with Magistrate Judge Dolinger and rejects Petitioners' contrary contention.[6]

### 2.   Objections of Worldstar and the Neves Estate

### a.   Denial of the Cross-Motion

Magistrate Judge Dolinger was confronted with a Contempt Motion that sought enforcement of the Amended Judgment, a judicial order of this Court.  Though Worldstar might have desired a piecemeal, lengthy and expensive adjudication beginning with a preliminary determination by an arbitration panel of whether the subordination agreement was violated by the Worldstar Lawsuit, that question was, quite simply, not at issue.  The Report answers the question of whether the Worldstar Lawsuit violates the Amended Judgment.  Though Worldstar repeatedly bemoans the Report's refusal to recognize that arbitrability can be arbitrated, Worldstar itself refuses to recognize that federal courts have the inherent authority to enforce their judgments.  Even though it was afforded an opportunity to make objections to the Report - and even though it did so

---

[6] Petitioners ask the Court, in the alternative, to order that the Neves Estate withdraw and abandon the Neves Lawsuit because it is precluded under the doctrine of res judicata as a collateral attack on a final judgment.  Because Petitioners did not seek this relief from Magistrate Judge Dolinger, the Court will not consider this new request.  However, because the Court concurs with Magistrate Judge Dolinger's analysis of the injunctive language in the Amended Judgment and disagrees with the Petitioners' objection, this alternative relief would be inappropriate in any event.

at such unnecessary and unpermitted length – Worldstar
still fails to cite a single authority for the proposition
that a district court may not review a motion for contempt
of its own order simply because related issues may be
subject to an arbitration clause. That – nothing more and
nothing less – was the task of the Report, and this Court,
upon its own review of the relevant facts on the record of
this proceeding, now affirms and adopts Magistrate Judge
Dolinger's denial of the Cross-Motion.

     b.   Finding Worldstar in Contempt

Again, Worldstar raises objections that fundamentally
miss the point. In determining whether Worldstar was in
contempt, Magistrate Judge Dolinger was required to assess
whether the Amended Judgment was sufficiently clear so as
to put Worldstar on notice that its conduct in bringing the
Worldstar Lawsuit violated the Amended Judgment. See
Southern New England Telephone, 624 F.3d at 145, 148
(finding defendants in contempt of order because they could
not "seriously contend that they were not on notice of
their [ ] obligations or of the consequences of
noncompliance"). There is simply no credible argument that
the Worldstar Lawsuit, which expressly sought to collect a
debt purportedly owed under one of the Underlying

Agreements, was not thereby "related to" one of the Underlying Agreements.   That the precise confines of the phrase "relating to" may have been unclear as applied to certain factual possibilities does not render it unclear as applied to the Worldstar Lawsuit; the Amended Judgment squarely placed Worldstar on notice that prosecution of the Worldstar Lawsuit was prohibited.   Accordingly, the Court finds that Worldstar was in contempt of the Amended Judgment when it initiated the Worldstar Lawsuit and, upon its own review of the relevant facts on the record of this proceeding, adopts as its own decision the Report's analysis on this point.

      c.   Objections of the Neves Estate

Because the Court agrees with and adopts the Report's conclusion that the Neves Estate should not be held in contempt for its conduct in brining the Neves Lawsuit, the questions of personal jurisdiction over the Neves Estate and the applicability of the Amended Judgment to the Neves Estate are ultimately moot.   The Court need not rehash the exhaustive and cogent analysis conducted in the Report – nor the additional and intricate analyses requested by the Neves Estate – to no practical ends.

3.  <u>Suchodolski's Objection</u>

Suchodolski objects to Magistrate Judge Dolinger's decision to permit Petitioner to conduct certain discovery. The permission of discovery at issue is a non-dispositive matter; as such, this portion of the decision – though objected to – is reviewed for clear error or mistake of law.  <u>See</u> Fed. R. Civ. P. 72(a); <u>Thomas E. Hoar</u>, 900 F.2d at 525.

Suchodolski's critique of Magistrate Judge Dolinger amounts to an argument that the discovery ordered in the Report was based on nothing more than Petitioners' speculative accusations regarding Suchodolski's conduct in relation to the Worldstar Lawsuit.  That position, however, is readily belied by the record.

Petitioners presented the testimony of their Brazilian attorney who averred that Suchodolski represented that he had the power to dictate the terms on which the Neves Estate would accept settlement of the Worldstar and Neves Lawsuits.  There was also evidence of Suchodolski's nearly decade-long pattern of attempting to frustrate the enforcement of the Underlying Agreements and doing so through his influence over and cooperation with Neves and Worldstar.  Moreover, Petitioners proffered evidence that

-18-

strongly suggested Suchodolski was funding the Neves and Worldstar Lawsuits by paying Worldstar's legal fees through a company he controlled.

Set against this evidence were Suchodolski's self-serving submissions and a contemporaneous letter that appears, on its face, to have been intended to obfuscate Suchodolski's involvement in the lawsuit. Moreover, Suchodolski does not dispute, nor did he dispute before the Magistrate Judge, the damning fact that he solicited a financial payout for the voluntary dismissal of the Neves and Worldstar Lawsuits; he merely disputes the conclusion that the Magistrate Judge drew from that fact. Magistrate Judge Dolinger's conclusion, however, was not clearly erroneous; to the contrary, it is the most reasonable and logical inference one might draw from weighing the facts presented by both Petitioners and Suchodolski.

In light of this juxtaposition of the evidence presented by Petitioners and Suchodolski, the Court has little trouble adopting Magistrate Judge Dolinger's conclusions as to the effect of this evidence and cannot find the decision to order discovery clearly erroneous or contrary to law. Accordingly, Suchodolski's request to set aside this portion of the Report is denied.

-19-

## III. ORDER

Accordingly, for the reasons discussed above, it is hereby

**ORDERED** that the Order and Report and Recommendation ("Report") of United States Magistrate Judge Michael H. Dolinger, dated July 17, 2012 (Docket No. 102), is hereby adopted in its entirety, and the objections of respondent Beno Suchodolski (Docket No. 106), respondents Consultora Worldstar S.A. ("Worldstar") and the Estate of Nelson Baeta Neves (Docket No. 116), and movants Cardell Financial Corp. and Deltec Holdings, Inc. (Docket No. 113), are DENIED; and it is further

**ORDERED** that substantially for the reasons stated in the Report the Court finds that Worldstar's proceeding with the Worldstar Action constituted contempt of court and the Court now adjudicates Worldstar liable for such contempt and directs the Clerk of Court to enter judgment accordingly; and it is further

**ORDERED** that Worldstar is ordered to withdraw the Worldstar Action, defined in the Report, and that Worldstar shall pay a daily fine of $1,000 to the Clerk of the Court should it fail to comply within thirty days of the entry of the contempt judgment adjudged by this Order, which fine

-20-

shall continue until Worldstar submits official documentation establishing that it has withdrawn the Worldstar Action; and it is further

**ORDERED** that Worldstar is ordered to pay to the petitioners herein, compensatory damages in the amount of reasonable attorneys' fees and costs incurred by petitioners in defending the Worldstar Action, as well as reasonable attorneys' fees and costs for bringing the motion for contempt, the amount of such fees to be determined in further proceedings before Magistrate Judge Dolinger.

**SO ORDERED.**

Dated:     New York, New York
           28 September 2012

                              _____
                                   VICTOR MARRERO
                                      U.S.D.J.

-21-